IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RICHARD DARNELL LUCAS,        )
                              )
        Plaintiff,            )
                              )
    v.                        )    CIVIL ACT. NO. 1:14cv949-CSC
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner of Social Security,[1]  )
                              )
        Defendant.            )

## MEMORANDUM OPINION

## I.  Introduction

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social

Security Act,  42 U.S.C. § 401 et seq., alleging that he was unable to work because of a

disability.  His application was denied at the initial administrative level.  The plaintiff then

requested and received a hearing before an Administrative Law Judge ("ALJ").  Following

the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent

request for review.  The ALJ's decision consequently became the final decision of the

Commissioner of Social Security (Commissioner).[2] *See  Chester v. Bowen*, 792 F.2d 129,

131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No.
103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social
Security matters were transferred to the Commissioner of Social Security.

§§ 405 (g) and 1383(c)(3).[3]  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[4] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3]  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.

[4]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).  The court "may not decide the facts anew, reweigh the evidence, or substitute  . . . [its] judgment for that of the [Commissioner]."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must, however,] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[5]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III.  The Issues

**A.  Introduction.**  The plaintiff was 49 years old at the time of the hearing before the ALJ and has an high school education.  The plaintiff's prior work experience includes work as an air frame mechanic and safety technician.  Following the administrative hearing, the ALJ concluded that the plaintiff has impairments of "status post left ankle inversion injury with scope, mild lumbar spondylosis, sleep apnea, migraines, hypertension, mild degenerative disease of hips, knees, and shoulders, cervical disc disease since February 2012, posttraumatic stress disorder, and major depressive disorder."  (R. at 14). Nonetheless, the ALJ concluded that the plaintiff was not disabled because the plaintiff has the residual functional capacity to perform sedentary work with limitations.[6]

**B.  The Plaintiff's Claims.**  These are the plaintiff's claims as stated by him.

1.  The Commissioner's decision should be reversed because the ALJ's RFC assessment fails to account for absenteeism stated within a report given "great weight" or for medically necessary use of a cane despite significant evidentiary support.

2.  The Commissioner's decision should be reversed because the ALJ failed to explain what weight was assigned to Dr. Sam Banner, the consultative examiner.

3.  The Commissioner's decision should be reversed because the ALJ failed to acknowledge or consider the side effects of medications.

(Doc. # 11, Pl's Br. at 3).

---

[6]  The ALJ in her opinion initially characterized the plaintiff's residual functional capacity as the "capacity to perform light work" with limitations.  The parties agree that this characterization is wrong because the exertional limitations specified in the residual functional capacity obviously describe sedentary work. (Doc. # 13-2 at 17; Doc. # 17 at 1).

### IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to his past work.   *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990).   In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends; and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).   The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981).   The ALJ must also state, with sufficient specificity, the reasons for her decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).   Within this analytical framework, the court will address the plaintiff's claims.

**A. The Residual Functional Capacity Assessment.**   The ALJ found that Lucas had the residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk 2 hours in an 8-hour workday; and sit 6-hours in an 8-hour workday. He can never climb ladders, ropes or scaffolds, but occasionally

climb ramps  and stairs. He can occasionally balance, stoop, crouch, kneel and crawl. He should avoid all work around moving, hazardous and dangerous machinery, commercial driving and all work at unprotected heights. He needs to avoid all exposure to extreme cold and extreme heat. He is limited to unskilled work that involves simple, repetitive tasks with no contact/interaction with the general public and occasional contact/interaction with co-workers and supervisors and no strict production quotas. He needs a sit/stand option every 30 minutes.

(R. at 16)

Lucas argues that the Commissioner's decision should be reversed because it "fails to include any meaningful accounting for the absenteeism given 'great weight,' or for medically necessary use of a cane consistent with the medical evidence and the ALJ's own RFC." (Doc. # 11, Pl. Br. at 3).  Lucas contends that the ALJ failed to mention his absenteeism at all in her opinion and failed to include the use of a cane restriction in her residual functional capacity determination.

During the administrative hearing, a vocational expert testified.  He identified several sedentary jobs which existed in the national economy that Lucas could perform with his limitations.  Lucas' counsel then asked him "if a person had to rely on an assistive device such as a cane to stand more than one to five minutes at a time, would he be able to do any of the three jobs you cited?"  The vocational expert responded, "No." (R. at 58). Lucas notes that Dr. Banner observed during a consultative examination that he "demonstrated pain and difficulty getting on and off table . . . [and] had to lean on table or use cane to

ambulate."[7] (R. at 723).  Based on this and other medical evidence of Lucas' ankle pain as well as cervical disc disease, Lucas claims that the ALJ's residual functional capacity determination is erroneous.

Residual functional capacity is an assessment, based on *all* relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.945(a)(1).  Dr. Banner did not find that Lucas could not walk.  Indeed, Dr. Banner found that "there was not atrophy of any muscle group in upper or lower extremities. Muscle tone was normal." (R. at 724).  On February 5, 2013, Lucas had a MRI of his cervical spine.  In his argument, Lucas incorporates the results of that imaging with this argument.

> Additionally, imaging of the cervical spine showed advanced degenerative changes with moderate to severe canal narrowing at the C3 through C6 levels with focal cord myelomalacia at C3; a point used by the ALJ to illustrate the need for a reduced amount of standing in her decision (Tr. 22, 1308-1309). (Emphasis added) The ALJ's rejection of cane use is a significant oversight . . .

(Doc. # 11, Pl's Br. at 6).

This oversight argument about the cane is erroneous on its face.  As Lucas notes, the ALJ incorporated in her residual functional capacity the need for reduced standing by affording Lucas a sit/stand option as well as other mobility limitations.  During the

---

[7]  With regard to leaning on the table or using a cane it is not entirely clear whether this is what Dr. Banner observed or what Lucas told him.  For the purpose of analysis, the court will assume Dr. Banner observed these restrictions.

7

administrative hearing the ALJ noted Lucas' use of a cane. (R. at 33).  The Court has scoured the medical evidence in this case.  No physician has ever prescribed a cane for Lucas' use.[8]  While Lucas has experienced ankle pain due to an injury in 1987, (R. at 402), he has been encouraged to walk for exercise.  (R. at 587, 700).  In 2011 he commented during an examination that he walks almost a mile three times a week.  (R. at 497).  In 2011, he was also examined by a rehabilitation specialist for evaluation of his back and ankle, but he was not prescribed a brace.  (R. at 505).  There is simply no substantial evidence that Lucas' need for an assistive device impairs his ability to work such that the limitations recognized in the ALJ's residual functional capacity determination are insufficient.

In October 2011, Dr. Estock, a non-examining Agency physician, opined that Lucas "may miss 1-2 days a month of work due to psy. signs and symptoms." (R. at 752).  During the vocational expert's testimony, Lucas' lawyer asked this question:

> Q.  Finally, if a person had to in either hypothetical one or two had to miss more than one job one day a week for either all or part of the day due to pain complaints – that is he's going to miss four to eight hours a week on a consistent basis.  Would such a person be able to maintain employment in the national economy?
>
> A.  No.

(R. at 58).

In his brief, Lucas argues that "Dr. Estock's opinion includes various psychological

---

[8]  In March 2010 during an examination by a VA physician, she noted Lucas' use of a cane and left ankle brace "as needed." (R. at 690) Lucas testified that a doctor told him to use a cane to have mobility because "keeping it stiff is not good.  So he said I need to move it a little." (R. at 41-42)

limitations but specifically states Mr. Lucas would likely miss one to two days per month from his impairments . . . " Of course, that is not what Dr Estock said; he said "may," and that is a far cry from "likely." Moreover, Dr. Estock was specifically referring to Lucas' psychological problems and not pain which was the focus of Lucas' question to the vocational expert. The record does not show that Lucas would be absent from work with the frequency he suggests.

**B. Dr. Banner's Opinion.** Lucas contends that the ALJ failed to explain what weight he assigned to Dr. Banner's opinion. Dr. Banner conducted a consultative examination of Lucas on September 20, 2011. (R. at 721). Lucas is correct in pointing out that an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). But in this instance it is not surprising that the ALJ did not say much about Dr. Banner's opinion because the doctor didn't offer comments on his objective examination. Dr. Banner diagnosed Lucas with chronic low back pain by history; sleep apnea by history and psychological disorder. (R. at 724). With regard to his objective examination, Dr. Banner found "no atrophy of any muscle group in upper or lower extremities" and normal muscle tone. (*Id*.). While Dr. Banner noted that Lucas' left ankle collapsed inward with gait, there was no weakness in upper and lower extremity muscle groups. (R. at 723). The ALJ summarized Dr. Banner's findings in her opinion, noting his observations that Lucas "had to lean on the table or use a cane to ambulate." (R. at 19). Based on this evidence, Lucas

argues that the ALJ was incorrect in concluding that there was no instability or weakness of the spine, knees or ankles.

If the court were to focus solely on Dr. Banner's observation about Lucas' performance during the exam, the court might be inclined to agree. But the court's review must be based on the record as a whole, and that record has substantial evidence supporting the ALJ's conclusion. First, Dr. Banner found no weakness or atrophy in any of Lucas' muscle groups. Secondly, throughout all the many examinations of Lucas by various medical personnel, none have ever found serious ambulatory problems. As a Dr Langford noted, even though Lucas' ankle problems were severe, a detailed review by the VA found his gait normal. (R. at 726). Indeed, an exhaustive system-by-system review of Lucas performed by the VA in 2012 found that his problems with prolonged standing, bearing weight and walking would not exclude sedentary employment not requiring prolonged standing and walking. (R. at 841, 864).

The court concludes that any error by the ALJ in failing to state what weight he attached to Dr. Banner's examination was harmless because it did not affect the outcome of the decision. The ALJ considered all of the evidence in reaching her conclusion. Her residual functional capacity determination accounted for the objective findings of Dr. Banner through the limitations on the nature of work Lucas could perform.

**C. Medication Side Effects.** The last issue raised by Lucas is his contention that the ALJ failed to consider the side effects of Lucas' medications. Here is Lucas' argument.

> At the hearing, Mr. Lucas described the side effects of his medications as causing him to sleep during the day (Tr. 51). In her decision, the ALJ states "there are no medically documented persistent medication side effects" (Tr. 22). Despite this statement, the medical evidence does, in fact, establish the existence and persistence of medication side effects. During August 2011, Dr. Sam Banner attempted to conduct a consultative exam but it had to be rescheduled because Mr. Lucas was far too sedated and was unable to complete the exam (Tr. 717). Further, treatment notes show Mr. Lucas is often tired and exhausted along with reporting medications causing sleepiness (Tr. 757, 1601). These notes support Mr. Lucas' testimony as to the existence of disruptive medication side effects and directly refute the ALJ's suggestion that no such notes exist. As a result, it is clear the ALJ disregarded the effect medication use would have upon Mr. Lucas' residual functional capacity . . .

(Doc. # 11, Pl. Br. at 9).

Lucas was referred to Dr. Banner for a consultative examination and went to see him on August 23, 2011. (R. at 717). Dr. Banner could not complete the examination because Lucas "appeared to be sedated and was unable to answer most of the questions." *Id.* On September 20, 2011, Lucas again reported to Dr. Banner, and he was "much more alert." (R. at 721). But there is no evidence in the record which supports a conclusion that Lucas' August sedation was caused by the prescribed medications he was taking.

The record does show that during a psychiatric evaluation in 2010, Lucas reported that he "feels tired and exhausted on most days." (R. at 757). But again there is no evidence in the record which connects Lucas' condition with the medications he takes. In fact, his exhaustion is more reasonably explained by what he first told the psychiatrist who said Lucas "reported that he wakes up with anxiety spells almost every night with shaking,

11

profuse sweating . . .   The patient admitted that he is a veteran who participated in 2 combat episodes and he often has nightmares . . . " (R. at 756).   Lastly, Lucas did report in 2012 during a visit to a VA medical facility that he felt more sleepy.   "It could have been the medication I took for migraines." (R. at 1601).   Lucas' records reflect that for migraine relief he takes Sumatriptan Succinate 100mg as needed but not more than 200mg per day. (R. at 1598).

There are 1301 pages of medical records in this case and the court has reviewed every one of them.   Lucas has received extensive evaluations; when medications have created problems, the medications have been changed; he has been tested for sleep apnea, and he has received treatment from VA and private medical providers.   Lucas' arguments about his "sedation" at the first examination by Dr. Banner and his observation about his migraine medication are nothing more than assumptions.   But in all of the records, there is not a bit of substantial evidence which supports a conclusion that Lucas' medications affect him to the extent that his ability to work is impaired.   Lucas' assumptions do not constitute substantial evidence.

Unquestionably, an ALJ is obligated to consider the side effects of medication on a person's ability to work.   *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981).   Here, the ALJ's residual functional capacity accounts for limitations on Lucas' abilities.   Given the paucity of evidence about Lucas' medication side effects, any failure of the ALJ to explicitly mention side effects is not error.

For the foregoing reasons, the court concludes that the final decision of the Commissioner should be affirmed.

The court will enter a separate final judgment.

Done this 21st day of March, 2016.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE